## Case No. 2,671.

### CHICKERING v. HATCH et al.

#### [1 Story, 516.] [1]

Circuit Court, D. Maine. May Term, 1841.

MASTER IN CHANCERY—POWERS ON REFERENCE—CERTIFICATE OF ENROLLMENT—CONCLUSIVENESS.

1. Where an interlocutory decree was made, referring it to a master, to ascertain and report to the court the amount of a claim, which the defendant had against certain real estate, which was conveyed to him, as a security for such claim; it was *held*, that the master was not bound by the statement of that claim in the defendant's answer, but was at liberty to inquire by all the evidence in the cause, and other evidence brought before him, what was the true extent and just amount of the claim, whether that evidence was in support of, or was contradictory to, the answer.

2. The statement of the title or ownership of a vessel in the custom house documents, whatever may be its effect between the parties to those documents, is not conclusive upon third persons, who have an adverse interest; but they are at liberty to show the real title to be different from what is stated therein.

This cause was formerly before this court, and the decision then made will be found reported in 3 Summ. 474 [Case No. 2,672]. By the interlocutory decree then passed, it was referred to a master to ascertain and report to the court the amount of the claim of Gideon Hatch, which was declared to be a charge on the land stated in the bill. The master now made his report as follows:

The undersigned, a master in this court, to whom it was referred by order of the court to ascertain the sums of money due to the said Gideon B. Hatch from the said William B. Hatch, for the services mentioned in the said Gideon's answer, his first report having been recommitted to him, having heard the parties,

and the evidence introduced by them, reports as follows: Gideon Hatch claims to be allowed wages as mate on board the schooner Infant, in the year 1825, for about nine months, at the rate of $16 a month. And wages on board the Tantamount from March 10th, 1826, to December 25th, 1826, nine and a half months, at about $15½ per month; on board the Tantamount from March to December, 1827, about nine months, at $20 per month; on board of the Tantamount in 1828, he claims in his answer nearly ten months, at $20 per month. On his examination he admitted, that his wages on board the Infant were $15 per month; and that he was entitled to wages for but three months and a half, in 1828, the vessel having then been sold.

The counsel for the defendant contends, that the court have decided, that the fund in question is chargeable with the amount of wages due to the said Gideon, for his said services; and that the only inquiry for the master is, as to the amount of wages so due; and that his answer is sufficient proof of his claims. But he introduces the deposition of Jeremiah Hatch to confirm the answer. This deposition is objected to on the ground of interest, and a certificate from the collector of the Passamaquoddy district is offered to prove, that on May 1st, 1826, the said Jeremiah Hatch was an owner of the said schooner with William B. Hatch, Seth Hatch, and Gideon Hatch; and that the said Jeremiah was master, and so liable to the said Gideon for his wages, and interested, that he should hold them out of his fund. This certificate is admitted, by agreement, as evidence in the same manner, as if it were a deposition from the collector, containing a copy of the record. The deposition is admitted by agreement, subject to the objection. This deposition confirms the answer of Gideon in some particulars, and contradicts it in some. It confirms it: 1. As to the Infant. Deponent knows, that Gideon was employed on board of her, because he was in company with and on board of her a great many times. 2d. As to the Tantamount. He knows that Gideon was employed as mate, because he was himself master of her for the year 1826, and part of 1827; and was on board of her the biggest part of the time in 1827 and 1828, and acted as master. Ans. 17, 18, 19, 20. He states, that he kept the account of Gideon's wages. That they were due to him from William B. Hatch, and that he never himself owned any part of that schooner. That Gideon purchased one quarter of William B. Hatch, but took his bill of sale from the Glovers. That he paid the money, that belonged to Gideon for wages, to the said Glovers, towards paying them what was due to them from William B. Hatch for his three quarters. That something over $300 of Gideon's wages was so paid to the Glovers. That there was due from William B. Hatch to Gideon, when the Tantamount was sold, from $500 to $600. On the other hand, he says, that Gideon received of

---

his wages, from time to time, about $100, and that he paid him a balance of his wages of about $100. It does not appear very clearly, whether he means two different amounts, each of $100, or only $100 in all. He says, too, that he and Gideon did, on or about May, 1827, take the usual oath, that they were the owners of the vessel. He states, that Gideon was employed on board the Tantamount from about the first of March to the first of October, 1828, as near as he can tell; and adds, that it was to the time, that she was attached. It is admitted, that she was sold June 11th, 1828. As to the amount of wages due to Gideon, which he speaks of in round terms as being $500 or $600, it is more than could have been due on the largest calculation, without deducting the payment he testifies to. See Statement No. 1. Richard Warren was introduced by the defendants, to confirm the claims stated in the answer. But I do not perceive, that his testimony was material. Gideon Hatch, the respondent, was introduced by the defendants' counsel, and offered to the complainant for examination. The complainant's counsel declining to examine him, and objecting to his examination. he was examined by the defendants' counsel, generally, as to his employment in the service of William B. Hatch. But his testimony was not considered by me as proper evidence, and was allowed no other weight, than as far as it contained admissions against himself. If his statements should have been admitted as evidence, the master does not find in them any thing to vary the conclusions, at which he arrived.

The complainant [John Chickering] introduced, as evidence to contradict the statements of the respondent and of Jeremiah Hatch, 1st. The certificate of Samuel Philips, collector of the port of Newburyport, certifying, "that the schooner Infant, William B. Hatch, master, was enrolled at this port, April 11th, 1825, and that her enrollment was surrendered at Passamaquoddy, July 6th, 1826. On the 22d of March, 1826, Benjamin Small became master." Which certificate was admitted by agreement to be used as evidence of the same effect, as a deposition from the collector, containing a copy of the record. The only effect of this certificate, as contradicting the respondent's answer or evidence, seems to be in fixing the time of the commencement of William B. Hatch's liability for wages to be April 11th, 1825, instead of March, 1825, as stated in the answer. The complainant likewise introduced the certificate of S. S. Rawson, collector of Passamaquoddy, which is admitted in the same manner, as the one above mentioned. This collector certifies, that it appears on record as follows, viz.: "Nov. 10th, 1824. Oliver Glover and James Glover, of Lubec, in the state of Maine, and George Savory, of Bradford, in the state of Massachusetts, are owners of the schooner Tantamount, and John Allen was master of her." "May 1st,

1826. Jeremiah Hatch, William B. Hatch, Seth Hatch, Jr., and Gideon Hatch, all of Dennysville, in the state of Maine, were owners of the said schooner, and Jeremiah Hatch was master." "June 20th, 1827. Jeremiah Hatch and Gideon Hatch, of Dennysville, in the state of Maine, were owners, and the said Jeremiah Hatch was master." "Nov. 19th, 1827. Owners the same as June 20th, 1827, and Gideon Hatch, master." And the enrollment was surrendered in Boston, June 12th, 1828. Likewise a bill of sale from Henry H. Huggeford, deputy sheriff of the county of Suffolk, Massachusetts, dated June 11th, 1828, of the said schooner Tantamount, to Joseph Patch and others, for $800; "he having (as stated in the said bill of sale) attached the same. on a writ in favor of Oliver Glover and James Glover, against Jeremiah Hatch, and one other writ in favor of Oliver Glover, against William B. Hatch, Jeremiah Hatch, Seth Hatch, Jr., and the said Gideon Hatch," which bill of sale was admitted as evidence. The said certificate of the collector of Passamaquoddy contradicts the answer of the said Gideon, and the evidence of Jeremiah Hatch, as to the ownership of the Tantamount by William B. Hatch.

But it is contended by the respondent, that it has already been settled by the court, that Gideon is entitled to his wages for all the time he served on board the said schooners, and that it is only for the master to ascertain the amount. If this be the correct principle for the master to act upon, he is of opinion, that the said Gideon is entitled to claim for his wages, while on board the Infant, ninety-seven dollars and thirty-seven cents; viz. wages for nine months, at $15, which amounts to $135.63, from which is to be deducted $37.63, which has been paid; leaving a balance of $97.37, as above. And for wages while on board the Tantamount, one hundred and ninety dollars and forty-four cents, viz.:

| | |
|---|---:|
| From March 10, 1826, to Dec. 25, 1826. 9½ months, at $15½ . . . . . . . . . . . . . | $147 25 |
| From March, 1827, to December, 9 months, at $20 . . . . . . . . . . . . . . . . . | 180 00 |
| From March, 1828, to June 11, 3 months, at $20 . . . . . . . . . . . . . . . . . | 60 00 |
| William B. Hatch owned but three fourths of the vessel, and | |
| Three fourths of the above sum is . . . . | $290 44 |
| From which deduct $100 paid . . . . . . . | 100 00 |
| Leaving a balance of . . . . . . . . . . . . . . | $190 44 |

This, added to the balance due to him on board the Infant, makes the whole amount two hundred and eighty-seven dollars and eighty-one cents. See statement No. 1. But if the liability of William B. Hatch is not to be considered as already definitely settled by the court, but liable to be controlled by the evidence produced before the master, then the effect of that evidence is to be considered. If the custom house records were to be held as conclusive evidence of ownership, in determining a claim for wages, then

it appears, that Glover and others were owners up to May 1st, 1826, when Jeremiah Hatch, William B. Hatch, Seth Hatch, Jr., and Gideon Hatch became owners, and so remained to June 20th, 1827. It is not stated in what proportion each owned; and the master infers, that each owned one quarter, and that Gideon would therefore be entitled to claim of William B. Hatch one quarter part of his wages for that time; viz. from May 1st, 1826, to December 25th, 1826, seven months and twenty-four days, at $15½, and from March 10th, 1827, to June 20th, 1827, three and a third months, at $20 per month, amounting to $46.91. As it appears, that on June 20th, 1827, Gideon Hatch, and the witness Jeremiah Hatch, became sole owners, Gideon could claim nothing of William B. after that time. Gideon would be entitled to his wages on board the Infant, commencing, as by collector Philips' certificate, April 11th, 1825, for seven and a half months, at $15, amounting to $112.50; from which is to be deducted the $37.63 paid, leaving $74.87, which, added to the balance due on board the Tantamount, $46.91, makes $121.78; from which is to be deducted the $100 paid as per Jeremiah Hatch's deposition, and there remains twenty-one dollars and seventy-eight cents, which the master finds to be the amount due on this view of the case. See statement No. 2.

If the master is authorized to weigh and compare the evidence of the records with Gideon's answer and evidence, his conclusion would be different. Jeremiah Hatch swears, that he himself never owned any part of the Tantamount, but that William B. Hatch owned three quarters and Gideon Hatch one quarter; but that the schooner "was papered three quarters in his name," "for security." He does not state, what he means by "security." He does not state, that any conveyance or pledge of her was made to him. The master infers, that the vessel was registered in his name, as a cover to keep it from the creditors of William B. Hatch. And that William B. may have been an equitable owner of three quarters of her, while so registered. This, however, does not account for the registry of William B. Hatch, Seth Hatch, Jr., Gideon Hatch, and Jeremiah Hatch, as owners, May 1st, 1826. The master is induced, therefore, to believe, that from May 1st, 1826, to June 20th, 1827, William B. Hatch owned one quarter, and Gideon Hatch one quarter, and that Gideon may claim of William B. one quarter of his wages for that period; and that after that time William B. was equitable owner of three quarters, while the record ownership was in Jeremiah and Gideon. If this equitable ownership, under a fraudulent cover, entitles Gideon to claim wages of William B., then he will be entitled in addition to his wages for one quarter, as above mentioned, to hold his wages against William

B. for three quarters of the vessel, from June 20th, 1827, to June 11th, 1828, viz:

| | | |
|---|---|---|
| From May 1st, 1826, to Dec. 25th, 1826, 7 ⁵/₆ months, at 15½, is | $121 00 | |
| From March 10th, 1827, to June 20th, 1827, 3⅓ months, at $20, is | 66 67 | |
| One quarter of which two sums is | | $ 46 91 |
| From June 20th to December 20th, 1827, 6 months, at $20, is | 120 00 | |
| In 1888, three months, at $20, is | 60 00 | |
| Three quarters of which two sums is | | 135 06 |
| To which add the balance due on board the Infant, as by the first statement | | 97 27 |
| | | $279 28 |
| And deduct the $100 paid | | 100 00 |

And the balance is one hundred and seventy-nine dollars and twenty-eight cents, which sum the master finds to be due upon this view. See statement No. 3.

The counsel for the complainant having suggested, that the answer being contradicted by the testimony of the plaintiff, and by the further answers of Gideon Hatch, and the testimony introduced by him, before the master, it becomes the duty of the master to reject the whole, and report in favor of the plaintiff. And if the master should not consider it his duty so to report, requesting him so to present the case, that he may have the benefit of exceptions to the report, the master states, that if the whole question of the credibility of the evidence were open to him, he should, from the contradictions, exhibited between the answer of the said Gideon and the evidence of his witness, Jeremiah, and the proof from the records, find great difficulty in believing the answer of the said Gideon, and the evidence of the said Jeremiah, entitled to sufficient credit to establish any claim in the said Gideon, and should be inclined to reject the whole claim as unsupported by evidence. For the oath of the said Gideon in his answer, and of the said Jeremiah in his deposition, are decidedly contradicted by their oaths made at the custom house. And it is admitted by Jeremiah, that he and Gideon did take the usual oaths at the custom house, at the time of the charges exhibited by the collector's certificate. There are contradictions likewise between Gideon and Jeremiah. Thus, Gideon states in his answer positively, that he was entitled to wages for ten months in 1828. But it is found and admitted, that he is entitled to wages for but three months of that year. He states, that he received of his wages but $37.63. Jeremiah says, that he paid him about $100. And it is doubtful, whether he is not to be understood to say $200. And this was from his wages on board the Tantamount, and the $37.63 appears from the answer to have been in part of his wages on board of the Infant. He states, that all his earnings

were received and retained by William B. Hatch. But Jeremiah says, that a part of them we repaid to the Glovers to pay for Gideon's quarter of the Tantamount. And this sum must have been somewhere from $100 to $300. For the Glovers received for the vessel $1200; for Gideon's quarter $300. Of this a part came from the sale of the schooner in Boston. She was sold for $800; out of which was to be paid the debt and costs, for which she was sold, the amount of which is not stated, and Gideon's share of the balance was paid to the Glovers, and the remainder of the $300 was paid out of his earnings, or the earnings of his share of the vessel. Gideon says, that he bought one quarter of the vessel from William B. Hatch. Jeremiah says, he bought it from William B., but took his bill of sale from the Glovers. From the collector's certificate, that on June 20th, 1827, Jeremiah Hatch and Gideon Hatch were owners, it would seem, that they were then equal owners, and that Gideon's share was one half. But the master has not considered himself at liberty to take into consideration these circumstances, as impeaching the credibility of Gideon's answer. If the court should think, that the $100 balance spoken of by Jeremiah in his 85th answer was a different sum from that spoken of in his answers 71, 72, 73, then this $100 additional is to be deducted from Gideon's claim in all the statements. But the master, though doubtingly, thinks that one sum only of $100 was intended.

Signed,     Henry Warren.

The statements Nos. 1, 2, and 3, referred to in the report, are omitted, as they are sufficiently explained in the report itself for the purposes of the decision made by the court.

To this report the following exceptions were filed by the plaintiff: Exceptions taken by the plaintiff to the report of Henry Warren, one of the masters of the said court to whom the said cause was referred, made in pursuance of an interlocutory decree of the said court: First exception. The said Chickering reserving to himself all exceptions taken at the hearing before the master, and which appear in his report, excepts to so much of the said report as allows the defendant, Gideon Hatch, any sum of money whatever; and insists upon the ground taken before the master, as set forth in the report, that the answer being contradicted by the testimony of the plaintiff, and by the further answers of the said Gideon, and the testimony introduced by him before the master, it becomes the duty of the master to reject the whole, and report in favor of the plaintiff. Second exception. But if, in the opinion of the court the first exception is not well taken, the plaintiff excepts to so much of the report, as allows the said Gideon, in the alternative, the sum of $287.81, or $179.28. Third exception. And the plaintiff excepts to so much of the said report as allows the said Gideon in the alternative the sum of $21.78 or $44.28, because the master in his statements Nos. 2 and 4, in which those two sums are reported, credits the sum of $100 only, instead of $200, the sum testified to by Jeremiah Hatch, as paid by him to Gideon Hatch.

Mr. Hobbs, for plaintiff.

C. S. Daveis, for defendant.

STORY, Circuit Justice. We think the true view of the case is that, which is presented in No. 3, annexed to the report of the master, by which $179.28 is allowed to the defendant, Gideon Hatch, under the order of the court. And we confirm the report accordingly; and overrule the exceptions filed in the case, so far as they touch this part of the report.

The short ground, upon which we have come to this conclusion is, that the statement No. 1, proceeds upon the supposition, that the answer of Gideon Hatch is conclusive as to his title to wages, and the extent of his claim, leaving to the master only to ascertain the amount. This is a mistake. The decretal order of the court left the whole matter open for inquiry before the master upon the answer and all the evidence in the case, which might be adduced in support of, or to control or contradict the answer or the claim. The statement No. 3 proceeds, therefore, upon the true ground, as the result, to which the master has arrived, upon a review of all the evidence, as well as the answer. Then, as to statement No. 2, it is founded upon the supposition, that the title or ownership of the vessel, as stated in the custom house documents, is conclusive of the title of the respective owners in a suit for wages. That is not a correct view of the law. On the contrary, whatever might be the case in a controversy between the respective parties to those documents, the true title or ownership may be shown to be different from that stated in those documents by a third person, whenever his interest is concerned therein. Now, this is precisely the predicament of the plaintiff; and hence the statement No. 2, cannot be supported. The result is, that the claim of Gideon Hatch for wages must stand upon the statement No. 3; and we are of opinion, that, under all the circumstances of the case, the allowance of $179.28 is the true balance due to him. The exceptions filed by the plaintiff are, therefore, overruled, and the report must stand confirmed for that sum; and a final decree for a sale of the property is to be entered, according to the opinion expressed at the original hearing of this cause, when the interlocutory decree was passed.